UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, | No. 2:21-cv-00355-TLN-CKD |
| Plaintiff, | |
| v. | **ORDER** |
| HUGO ALEJANDRO NAVARRO-GONZALEZ, individually and d/b/a TAQUERIA LA BAMBA BAR & GRILL, | |
| Defendant. | |

This matter is before the Court on Plaintiff G&G Closed Circuit Events, LLC's ("Plaintiff") Motion for Partial Summary Judgment. (ECF No. 15.) Also before the Court is Defendant Hugo Alejandro Navarro-Gonzalez's ("Defendant") Motion for Summary Judgment.[1] (ECF No. 16.) Plaintiff filed a reply.[2] (ECF No. 17.) For the reasons set forth below, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment and DENIES Defendant's Motion for Summary Judgment.

///

---

[1] Defendant's Motion for Summary Judgment includes his opposition to Plaintiff's Motion for Partial Summary Judgment. (ECF No. 16.)

[2] Plaintiff's Reply includes its opposition to Defendant's Motion for Summary Judgment. (ECF No. 17.) Defendant did not file a reply.

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND[3]

The instant action arises out of the alleged unlawful interception, receipt, and/or publication of a sports program — *Mikey Garcia v. Jessie Vargas* Championship Fight — ("Program"), which was telecast nationwide on Saturday, February 29, 2020. (ECF No. 15-1 at 1.)  Plaintiff was granted exclusive commercial distribution rights as well as nationwide anti-piracy enforcement rights with respect to the Program.  (*Id*. at 2.)  The Program included all undercard bouts and fight commentary encompassed in the television broadcast of the event.  (*Id*.)

Defendant was the sole owner and operator of the commercial establishment Taqueria La Bamba Bar & Grill ("Taqueria").  (*Id*.)  The Program was broadcast at the Taqueria on February 29, 2020.  (*Id*.)  Plaintiff did not authorize Defendant to broadcast the Program at Taqueria — Defendant never purchased a commercial license from Plaintiff or paid the commercial licensing fee to broadcast the Program.  (*Id.*)  Defendant contends a customer used his personal phone to stream the Program via the internet and connected his phone to one television in the Taqueria.  (ECF No. 16-6 at 2.)

Plaintiff brought this action on February 24, 2021, asserting claims under 47 U.S.C. § 605 ("§ 605"), 47 U.S.C. § 553 ("§ 553"), and state law claims for conversion and violation of Cal. Bus. & Prof. Code § 17200.  (ECF No. 1.)  Plaintiff filed its motion for partial summary judgment on February 3, 2022.  (ECF No. 15.)  Defendant filed his motion for summary judgment on March 8, 2022.[4]  (ECF No. 16.)

///

///

---

[3]   The factual background is taken largely verbatim from Plaintiff's Statement of Undisputed Facts (ECF No. 15-1) which are not disputed by Defendant (ECF No. 16-6 at 3).

[4]   On March 30, 2022, this action was stayed pending a final decision by the Ninth Circuit in a related litigation, *G & G Closed Cir. Events, LLC v. Liu*, 45 F.4th 1113 (9th Cir. 2022).  (ECF No. 18.)  The Ninth Circuit issued its decision in *Liu*, and the stay in this action was lifted on April 10, 2024.  (ECF No. 22.)  On December 16, 2024, the parties submitted supplemental briefs addressing the effect, if any, *Liu* had on the cross motions for summary judgment.  (ECF Nos. 25, 27.)  Because the supplemental briefs have no bearing on the Court's analysis, the Court does not address the additional arguments made therein.

## II.     STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at 587.

### III.   ANALYSIS

The parties concurrently move for summary judgment on the issue of liability as to all Plaintiff's claims.[5]  (ECF Nos. 15, 16.)  While Plaintiff asserts claims under federal piracy statutes,[6] a state law claim for conversion, and a state law claim under Cal. Bus. & Prof. Code §

---

[5] Defendant also moves for summary judgment on the issue of damages as to all of Plaintiff's claims.  (ECF No. 16.)  In opposition, Plaintiff contends "any such arguments [as to damages] are premature."  (ECF No. 17 at fn. 7.)  The Court agrees with Plaintiff and will not address the issue of damages at this time.

[6] While Plaintiff asserts Defendant's broadcast of the Program violates § 605(a) and § 553(a)(1), the parties' briefing focuses on § 605(a) with little discussion or application of § 553(a)(1).  (*See generally* ECF Nos. 15–17.)  Indeed, caselaw suggests a plaintiff may not simultaneously pursue relief under both sections of the Communications Act.  *See J&J Sports Prods., Inc. v. Torres*, No. 2:11-cv-00653-JAM-KJN, 2011 WL 6749817, at *4 (E.D. Cal. Dec. 22, 2011) (collecting cases).  Therefore, the Court only addresses liability under § 605(a).

1  17200, the parties do not raise distinct liability arguments as to each claim.  (*See generally* ECF

2  Nos. 15–17.)  Instead, the parties appear to agree that "inasmuch as [a party] is successful in his

3  request for summary judgment in his favor regarding the alleged [federal statutory violations, the

4  party] is also entitled to judgment in his favor regarding Plaintiff's [state law claims]."  (ECF No.

5  16 at 12.)  Absent argument to the contrary, the Court therefore only addresses whether

6  Defendant violated § 605.

7        Plaintiff claims it had exclusive rights to distribute the Program and alleges Defendant

8  unlawfully intercepted or received the Program and exhibited it at the Taqueria without

9  authorization.  (ECF No. 15 at 3.)  Plaintiff asserts Defendant's conduct constitutes a violation of

10 § 605, which prohibits unauthorized interception and publication of communications.  (*Id*. at 4,

11 6.)  Seemingly anticipating Defendant's argument that its conduct does not constitute a violation

12 of § 605 because the internet was used to broadcast the Program, Plaintiff discusses in detail three

13 district court cases in which courts found liability under § 605 even when defendants used the

14 internet during the unauthorized publication of a communication.  (*Id*. at 6–8 (citing *G & G*

15 *Closed Circuit Events, LLC v. Gonzalez Ruiz*, 379 F. Supp. 3d 1061 (S.D. Cal. 2019); *J & J*

16 *Sports Productions, Inc. v. Jaschkowitz*, No. 5:14-CV-440-REW, 2016 WL 2727015 (E.D. Ky.

17 May 6, 2016); and *G & G Closed Circuit Events, LLC v. Alexander*, No. CV-18-02886-PHX-

18 MTL, 2020 WL 1904628 (D. Ariz. Apr. 17, 2020).)  Plaintiff contends if the Court finds that

19 Defendant's use of the internet does not shield it from liability, there can be no reasonable dispute

20 that the liability factors are established.  (*Id*. at 11.)

21       Defendant does not dispute the Program was broadcast at the Taqueria without payment of

22 the commercial broadcast license to Plaintiff.  (ECF No. 16 at 3.)  Defendant states, however,

23 "[n]o cable television signal was used to view the [Program], and no satellite signal was used to

24 view the [Program] either."  (ECF No. 16-1 at 1.)  Accordingly, Defendant moves for summary

25 judgment on the basis that the Program was streamed over the internet and thus does not fall

26 under the purview of § 605.  (*Id*.)  Defendant cites to a litany of cases that purportedly support his

27 position without substantively discussing any case in detail.  (*See generally id*.)  A few of the

28 cases cited by Defendants include *Joe Hand Promotions, Inc. v. Michael Cusi, et al.*, No. 3:13-cv-

5

935-MMA-BLM, 2014 WL 1921760 (S.D. Cal. May 14, 2014), *Zuffa LLC v. Justin.tv, Inc.*, 838 F. Supp. 2d 1102 (D. Nev. 2012), and several cases from the Central District of California. (*Id*. at 4–5.) Defendant argues it is inconceivable that the intent of § 605 would be to cover an unauthorized publication of a communication using the internet, as the statute was drafted at a time when this technology did not even exist. (*Id*. at 5.)

In reply, Plaintiff argues Defendant's motion for summary judgment should be denied because he has not satisfied his burden for judgment as a matter of law. (ECF No. 17 at 9.) Specifically, Plaintiff argues Defendant fails to provide evidence or information supporting his contention that "[n]o cable television signal was used to view the [Program], and no satellite signal was used to view the [Program] either." (ECF No. 17-2 at 2–3 (quoting ECF No. 16-1 at 1).) Plaintiff further contends, even assuming the broadcast of the Program occurred over the internet, it is still a violation of § 605 because Congress, in enacting the Cable Communication Act of 1984, sought to cast a wide net both as it applies to piracy and to technology as a whole and argues Defendant provides no authority for his contention otherwise. (*Id*. at 13.)

As a threshold matter, the Court notes the parties' briefing focuses on whether Defendant's use of the internet while broadcasting the Program absolves it of liability under § 605(a). (*See generally* ECF Nos. 15–17.) Indeed, Defendant's opposition exclusively addresses this question and does not raise any additional argument as to why Defendant should not be liable if the Court finds use of the internet does not absolve it from liability under § 605(a). (*See* ECF No. 16.) Therefore, based on Defendant's arguments, the Court only considers the pending motions based on whether Defendant's use of the internet while broadcasting the Program absolves it of liability under § 605(a).

Section 605(a) provides, in relevant part:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, [] to any person. . .

47 U.S.C. § 605(a).

///

6

Further, the Communications Act provides the term "wire communication" or "communication by wire" means the transmission of writing, signs, signals, pictures and sounds of all kinds by aid of wire, cable or other like connection between the points of origin and reception of such transmission, including all instrumentalities, facilities, apparatus, and services (among other thing, the receipt, forwarding, and delivery of communications) incidental to such transmission. 47 U.S.C. §§ 153(40), (59). Additionally, the Ninth Circuit has held that "communications" protected by § 605(a) include satellite television signals. *See DirecTV, Inc. v. Webb*, 545 F. 3d 837, 844 (9th Cir. 2008).

The Ninth Circuit has not directly addressed the specific question of whether an internet violation is covered under § 605(a). Moreover, as the parties acknowledge, district courts are split regarding the application of § 605 to internet violations. (ECF No. 15 at 6; ECF No. 16 at 4–5.) Defendant argues this Court should adopt the reasoning by district courts that have determined § 605 does not encompass internet violations, while Plaintiff argues the cases that have determined that internet violations are within the scope of § 605 are more recent and present the better analysis. (ECF No. 16 at 4–5; ECF No. 15 at 8.)

The Court is persuaded by the line of reasoning in the cases presented by Plaintiff, which suggest use of the internet during an unauthorized publication of a communication does not absolve a defendant of liability because § 605 specifically prohibits the *divulgence* of an unauthorized publication of a communication: *Gonzalez Ruiz*, 379 F. Supp. 3d 1061; *Jaschkowitz*, 2016 WL 2727015; and *G & G Closed Circuit Events, LLC v. Alexander*, 2020 WL 1904628. The Court will address each case in turn.

In *Gonzalez Ruiz*, plaintiff G & G Closed Circuit Events, LLC purchased and retained the exclusive commercial exhibition licensing rights to a fight, and there was no dispute the fight was shown at defendant's taco shop without authorization from the plaintiff. 379 F. Supp 3d at 1062. Relying heavily on the reasoning in *Jaschokowitz*, the court found the display of the fight via projection television, at a minimum, violated § 605 because there was no authorization to display the fight to other patrons and therefore, the divulgence of the fight was sufficient to establish liability. *Id.* at 1066 (comparing *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 917

(6th Cir. 2001) (holding that cable operator violated the first sentence of § 605(a) even though it did not intercept the event telecast in question because the cable operator divulged the telecast to an unauthorized person).)

In *Jaschkowitz*, plaintiff J & J Sports held the commercial exhibition licensing rights to broadcast a fight, and there was no dispute that a bartender's boyfriend showed the fight "from the Internet by using a smart phone connected to the projection television" at a karaoke bar. 2016 WL 2727015 at *1. Relying on an opinion from the Sixth Circuit, the court "described the broad scope of § 605: it 'defines what constitutes the unauthorized publication or use of electronic communications. It includes such prohibited practices as the divulgence of wire or radio communications by persons authorized to receive them to others who are not so authorized, and the interception of any radio communication by a person not authorized to receive that communication from the sender.'" *Id*. at *3. (citing *Eliadis*, 253 F.3d at 907.) The court found because the karaoke bar, "without authorization, after receiving or assisting in receiving, the Program via [a] smart phone, divulged or published the Program via projected television," defendants violated § 605. 2016 WL 2727015 at *4.

In *Alexander*, plaintiff G&G Closed Circuit Events LLC obtained an exclusive distribution license to telecast a fight, and there was no dispute that defendant displayed the telecast using an Amazon Firestick. *2020 WL 1904628* at *1. The court disagreed with defendants' arguments that "they should not be liable because § 605 does not prohibit pirating internet-based programs . . . [and] they did not unlawfully intercept the satellite signal because they lawfully purchased an internet streaming peripheral, the Amazon Firestick." *Id*. at *2. The court reasoned "the plain language of § 605(a) prohibits the 'unauthorized receipt and use of radio communications for one's own benefit or for the benefit of another' . . . [which] includes satellite communications . . . [and i]t does not matter that [d]efendants obtained the programing by pulling it from an internet source rather than by, for example manipulating hardware or using a counterfeit access card." *Id*. (quoting § 605) (internal citations omitted).

Here, it is undisputed that Plaintiff was granted exclusive commercial distribution rights with respect to the Program. (ECF No. 15-1 at 1.) The Program included all undercard bouts and

8

1  fight commentary encompassed in the television broadcast of the event.  (*Id.*)  While the Court
2  notes the parties' briefing is devoid of any discussion regarding whether the Program is a
3  "communication" protected under § 605(a), Defendant does not dispute the Program is a
4  television broadcast.  (*Id.*)  Absent argument to the contrary, the Court finds the Program
5  involved broadcasting satellite television signals, which are protected under § 605(a).  *See*
6  *DirecTV, Inc. v. Webb*, 545 F. 3d 837, 844 (9th Cir. 2008).

  It is further undisputed that Plaintiff did not authorize Defendant to broadcast the Program at Taqueria — Defendant did not purchase a commercial license from Plaintiff or pay the commercial licensing fee to broadcast the Program.  (*Id.*)  Plaintiff does not offer any proof of Defendant's direct interception of the program, only a declaration attesting that the Program was on one television inside of the Taqueria with a DAZN logo on the right upper corner of the screen.  (ECF No. 15-2 at 2.)  However, Defendant admits a customer used his personal phone to stream the Program via the internet and connected his phone to the television in the Taqueria. (ECF No. 16-6 at 2.)

  Based on the undisputed facts and the foregoing caselaw, the Court finds that Defendant, at a minimum, violated § 605(a) when it divulged the Program without authorization from Plaintiff.  *See Jaschkowitz*, 2016 WL 2727015 ("Simple unauthorized divulgence of a qualifying transmission suffices under § 605(a) sentence one"); *see also DIRECTV, LLC v. Perugini*, 28 F. Supp. 3d 351, 355 (M.D. Pa. 2014) ("Section 605(a) prohibits the unauthorized divulgence of a satellite communication, even after lawfully receiving the communication, it unauthorized recipients, such as patrons.").

  For its part, while Defendant asks the Court to grant its motion for summary judgment because "no satellite signal was used to view the [Program]" and an internet violation is not within the purview of § 605, Defendant fails to provide the Court with admissible evidence in support of its arguments.  The evidence Defendant submits in support of its contention that "no satellite signal was used to view the [Program]" is his own declaration.[7]  Plaintiff's objects to

---

[7]  Defendant also attached Plaintiff's discovery responses to its opposition to Plaintiff's Motion for Summary Judgment.  (ECF Nos. 16-3, 16-4, 16-5.)  Upon review of the responses,

1  Defendant's statement on the basis that Defendant has no independent knowledge of DAZN's
2  business model and offers no basis by which this information, which Plaintiff argues goes to how
3  technological signals are received at the establishment, are within his personal knowledge.  (ECF
4  No. 17-2 at 3.)  Plaintiff's objection is sustained for lack of foundation as the statement is a
5  conclusion without any facts to support it.

6  Further, Defendant fails to provide the Court with persuasive authority or substantive
7  briefing in support of its argument that an internet violation is not within the purview of § 605.
8  As previously mentioned, while Defendant cites to several cases which it claims support its
9  position, Defendant did not discuss any case in detail.  (*See generally* ECF No. 16.)  Further, of
10 the cites cited, the Court finds them to be inapposite.  For example, in *Cusi*, while the court
11 granted summary judgment in favor of defendants, it did not decide whether internet streaming
12 provided a basis for alleging a violation under § 605.  2014 WL 1921760 at *3.  As another
13 example, in *Zuffa*, plaintiff alleged that users of defendant, a technology company and website
14 operator that allowed users to stream or broadcast live video across the internet, streamed a
15 particular bout for which plaintiff had a copyright.  838 F. Supp. 2d 1102 at 1103.  The court
16 dismissed plaintiff's claims under the Communications Act holding the Communications Act
17 does not pertain to the alleged conduct in the case, where users of defendant copied the event and
18 then rebroadcast it over the internet.  *Id*. at 1107.  Where here the Court is tasked with deciding
19 whether Defendant's internet violation constitutes a violation of § 605, the Court finds *Cusi* and
20 *Zuffa* to be of little value.

21 Based on the record before it, the Court GRANTS Plaintiff's Partial Motion for Summary
22 Judgment and DENIES Defendant's Motion for Summary Judgment as to liability under § 605.

23 **IV.   CONCLUSION**

24 For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is hereby
25 GRANTED (ECF No. 15) and Defendant's Motion for Summary Judgment is hereby DENIED

---

27 however, the Court finds the responses to be entirely consistent with Plaintiff's position and of
   little value to Defendant's position.  As Defendant has not discussed any specific response in its
28 briefing, the Court does not address any response specifically.

10

1  (ECF No. 16).  As the Court declines to consider damages at this time, the Court will permit the
2  parties to file an additional motion for summary judgment which should address all issues
3  pertaining to damages.  Otherwise, the parties may proceed to trial on the issue of damages.  The
4  parties are hereby ordered to file a Joint Status Report within thirty (30) days of the electronic
5  filing date of this Order indicating: (1) how the parties intend to proceed and (2) a briefing
6  schedule if the parties wish to file another motion for summary judgment or available trial dates if
7  the parties wish to proceed to trial.
8       IT IS SO ORDERED.
9  Date: March 27, 2025

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

11