UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

G & G CLOSED CIRCUIT EVENTS, LLC,

Plaintiff,

v.

HUGO ALEJANDRO NAVARRO-GONZALEZ, individually and doing business as TAQUERIA LA BAMBA BAR & GRILL,

Defendant.

No. 2:21-cv-00355-TLN-CKD

**ORDER**

This matter is before the Court on Plaintiff G & G Closed Circuit Events, LLC's ("Plaintiff") Motion for Attorneys' Fees and Costs. (ECF No. 40.) Defendant Hugo Alejandro Navarro-Gonzalez, individually and doing business as Taqueria La Bamba Bar & Grill, ("Defendant") filed an opposition. (ECF No. 45.) Plaintiff filed a reply. (ECF No. 46.) For the reasons set forth below, the Court GRANTS in part Plaintiff's Motion for Attorneys' Fees and Costs.

///

///

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying this action are stated in this Court's previous Orders. (ECF No. 30 at 2; ECF No. 37 at 2.) Because the facts are well known to the parties, the Court does not need to restate all facts here. Instead, the Court limits its recitation to the background pertinent to the instant Order. This action arises from Defendant's unauthorized display of a sports program — the *Mikey Garcia v. Jessie Vargas* Championship Fight ("Program") — at Defendant's commercial establishment. (ECF No. 37 at 2.) Plaintiff had exclusive commercial distribution rights for the Program. (*Id.*) Defendant divulged the Program without purchasing a commercial license from Plaintiff. (*Id.*; ECF No. 30 at 9.) Plaintiff brought this action against Defendant, asserting federal piracy claims under 47 U.S.C. § 605 ("§ 605") and 47 U.S.C. § 553 ("§ 553") and state-law claims for conversion and violation of California Business and Professions Code § 17200. (ECF No. 30 at 4–5, 5 n.6.) On March 28, 2025, this Court granted Plaintiff's motion for partial summary judgment and denied Defendant's motion for summary judgment, finding Defendant violated § 605(a) and state law when it divulged the Program without Plaintiff's authorization. (*Id.* at 5, 10.) On November 10, 2025, the Court granted in part and denied in part Plaintiff's motion for summary judgment on damages and awarded $5,000 in statutory damages under § 605(e)(3)(C)(i)(II) and $2,860 in damages for Plaintiff's conversion claim. (ECF No. 37 at 7.) On November 26, 2025, Plaintiff filed the instant motion for attorneys' fees and costs. (ECF No. 40.)

## II. STANDARD OF LAW

Under the American rule, "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Plaintiff seeks an award of fees and costs under a fee-shifting statute allowing recovery of attorneys' fees in signal piracy matters, § 605(e)(3)(B)(iii). That statute requires the court to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S. § 605(e)(3)(B)(iii).

In the Ninth Circuit, the starting point for determining reasonable attorneys' fees is the lodestar calculation. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir.

1987) (citing *Hensley*, 461 U.S. 424). The lodestar constitutes "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.*

After calculating the lodestar, "the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996) (footnotes omitted) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *cert. denied* 425 U.S. 951 (1976)). Only "in rare and exceptional cases" does the lodestar not already reflect these factors. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). The *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[1] 526 F.2d at 70; *see also Jordan*, 815 F.2d at 1263 n.11 (noting the Ninth Circuit no longer requires a court to address every *Kerr* factor). In addition to the *Kerr* factors, this District considers "such other matters as the Court may deem appropriate under the circumstances" when awarding fees. E.D. Cal. L.R. 293(c)(13).

## III. ANALYSIS

Plaintiff seeks $51,122.50 in attorneys' fees and $2,542.27 in costs. (ECF No. 40 at 8.) In opposition, Defendant argues the requested fees and costs are excessive. (ECF No. 45 at 2.) The Court addresses the requested fees and costs in turn.

---

[1] The Court notes that while the *Kerr* factor regarding a fixed versus contingent fee structure remains in this District's local rules, E.D. Cal. L.R. 293(c)(6), this factor appears to have been abrogated in *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992). However, this factor is ultimately irrelevant to resolving the instant motion.

A. <u>Fees</u>

By statute, the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). A "person aggrieved" includes in relevant part "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." *Id.* § 605(d)(6). Plaintiff asserts without opposition that it is an aggrieved party entitled to fees. (ECF No. 40 at 2; ECF 45 at 2 (admitting Plaintiff prevailed on its motion for summary judgment).) Accordingly, this Court must award Plaintiff reasonable attorneys' fees. *See Joe Hand Promotions, Inc. v. Albright* (*Albright*), No. CIV. 2:11-2260 WBS CMK, 2013 WL 4094403, at *1 (E.D. Cal. Aug. 13, 2013) (noting recovery of attorneys' fees is mandatory under 47 U.S.C. § 605).

The party seeking attorneys' fees bears the burden of producing documentary evidence demonstrating the number of hours spent on and rates in the litigation. *McCown v. City of Fontana Fire Dep't*, 565 F.3d 1097, 1102 (9th Cir. 2009). The burden then shifts to the party opposing fees to submit evidence challenging the accuracy and reasonableness of the hours charged and the facts of the affidavit. *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). In determining a reasonable number of hours, the Court reviews detailed time records to determine whether the hours claimed are adequately documented and whether any of the hours were unnecessary, duplicative, or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987).

The Court considers the parties' contentions in the following order: which attorneys incurred recoverable fees, at what reasonable hourly rates, for how many reasonable hours of work, and with what enhancements or reductions.

*i. Attorneys Incurring Recoverable Fees*

Plaintiff seeks attorneys' fees for the work of Plaintiff's counsel of record, Thomas P. Riley, and of an unnamed research attorney who is not a member of the State Bar of California. (ECF No. 40 at 5; ECF No. 40-1 at 2, 7–8.) In opposition, Defendant argues, without citing to authority or contradicting Plaintiff's proffered facts, that awarding fees for the research attorney's

work is inappropriate because such an award would condone the unauthorized practice of law. (ECF No. 45 at 7.) In reply, Plaintiff contends the research attorney's licensure in California is "irrelevant" because the attorney merely "provided litigation support" to Mr. Riley, including reviewing files and drafting documents. (ECF No. 46 at 7.) Because of the nature of the research attorney's work, Plaintiff argues, the research attorney's fees are recoverable under *Winterrowd v. American General Annuity Insurance Co.*, 556 F.3d 815 (9th Cir. 2009). (*Id.* at 7–8.)

The Ninth Circuit in *Winterrowd* held an attorney who was not a member of the State Bar of California could recover attorneys' fees for his work in a matter before the District Court for the Central District of California. 556 F.3d at 825. The court reasoned the out-of-state attorney "did not render legal services directly to the plaintiffs" because he "did not physically appear before the Central District, did not sign pleadings in the case before the Central District, [and] had minimal, nonexclusive contacts with the . . . plaintiffs," to whom a California-licensed attorney "alone remained responsible." *Id.* However, the court cautioned "an attorney may not receive attorney's fees under the holding in this case if there is evidence he did not meet the legal qualifications to be admitted *pro hac vice* to the bar of the relevant court had he applied; thus, disbarred, suspended or otherwise unqualified attorneys may not be the beneficiaries of the holding in this case." *Id.*

Here, this action's docket indicates the research attorney, like the attorney in *Winterrowd*, did not appear before this Court and did not sign pleadings. (*See, e.g.,* ECF No. 50 at 1 (listing Mr. Riley as Plaintiff's counsel of record).) Additionally, the billing entries attributed to the research attorney suggest the attorney reviewed and drafted documents without direct contact with Plaintiff, indicating only Mr. Riley was directly accountable to Plaintiff. (ECF No. 40-1 at 7–8.) Moreover, in the absence of contrary evidence from Defendant, this Court must accept Mr. Riley's assertion that the research attorney is a member in good standing of several states' bars (ECF No. 40-1 at 2), which suggests he would have been admitted pro hac vice in this matter had he applied, *see* E.D. Cal. L.R. 180(b)(2).[2] Pursuant to *Winterrowd* and under the facts presented

---

[2] The Court notes pro hac vice admission in this District is not available to an otherwise eligible attorney if the attorney resides in California, is regularly employed in California, or is

here, then, Plaintiff may recover attorneys' fees for the research attorney's work.

*ii. Hourly Rates*

Plaintiff states Mr. Riley's billing rate is $750 per hour and the research attorney's billing rate is $325 per hour. (ECF No. 40 at 5.) Plaintiff acknowledges these rates are "at the high end" for this forum but argues they "are within ranges for partners and associates in the Eastern District," citing three cases. (*Id.* at 5–6.) Although Plaintiff asserts "counsel believes these rates are reasonable and should be awarded," it notes this Court last year set Mr. Riley's hourly rate at $375 and the research attorney's hourly rate at $225 when calculating a fee award. (*Id.* at 6.) Plaintiff further asserts commercial signal piracy "is a specialized area of law" that requires expertise, but it admits this action is otherwise unremarkable. (*Id.* at 5.) According to Plaintiff, the case "did not present any unusual challenges," "did not preclude counsel from taking any other employment," did not involve time limits, and was not undesirable. (*Id.*) In opposition, Defendant argues Plaintiff failed to adequately demonstrate why Plaintiff's requested hourly rates are reasonable in this District and for this area of law, calling Mr. Riley's claimed $750 hourly rate "preposterous and unrealistic." (ECF No. 45 at 7.) In reply, Plaintiff directs the Court again to the three cases in this District. (ECF No. 46 at 6.)

In determining the reasonableness of hourly rates, the Court refers to the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Chalmers*, 796 F.2d at 1210–11. "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan*, 815 F.2d at 1263. "[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts also rely on their own familiarity with the market in the district where the

---

regularly engaged in professional activities in California. E.D. Cal. L.R. 180(b)(2). Without specific contentions from Defendant indicating one of these three exceptions apply and given the research attorney's affiliation with states outside of California, the Court assumes the research attorney would have been admitted pro hac vice in this District had he applied.

court sits. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." (citation omitted)).

This Court finds Plaintiff's scant justification for its requested hourly rates unpersuasive. First, Plaintiff fails to explain why this Court should depart from the hourly rates it set for Mr. Riley and the research attorney last year and discounts without explanation other recent cases in this District setting comparable rates for these two attorneys. (ECF No. 40 at 6.) Prior rate determinations specific to Plaintiff's attorneys in this District are satisfactory evidence of the prevailing market rate. *United Steelworkers of Am.*, 896 F.2d at 407. As Plaintiff acknowledges, this Court last year set Mr. Riley's hourly rate at $375 and the research attorney's hourly rate at $225. *G & G Closed Cir. Events, LLC v. Hunter* (*Hunter*), No. 2:22-cv-2002-TLN-SCR, 2025 WL 1409807, at *2 (E.D. Cal. May 15, 2025), *findings and recommendations adopted in full sub nom. G&G Closed Cir. Events, LLC v. Hunter*, 2025 WL 1695946, at *1 (E.D. Cal. June 17, 2025) (Nunley, J.). Plaintiff fails to explain why Mr. Riley's rate should be doubled to $750 per hour and why the research attorney's rate should be increased to $325 per hour beyond baldly asserting "counsel believes these rates are reasonable and should be awarded." (ECF No. 40 at 6.) Plaintiff also admits that several factors that would warrant higher hourly rates — novelty and difficulty, preclusion of other employment, time limits, and undesirability — are not at play here. (*Id.* at 5.) The Court therefore finds the requested rates unreasonable. The lower rates this Court set last year, in contrast, are in line with attorney fee awards in other cases Mr. Riley has handled in this District, which he in part acknowledges. (ECF No. 40 at 6 (noting the courts in *Albright* and *J & J Sports Prods., Inc. v. Barajas* (*Barajas*), No. 1:15-cv-01354-DAD-JLT, 2017 WL 469343 (E.D. Cal. Feb. 2, 2017), set Mr. Riley's hourly rate at $350), 8 (citing for other propositions additional orders from this District setting lower rates).) Specifically, before last year, it appears this District consistently set Mr. Riley's hourly rate at $350 and the research attorney's hourly rate at not higher than $225. *Albright*, 2013 WL 4094403, at *2–3 (setting Mr. Riley's hourly rate at $350 and research attorney's hourly rate at $150); *J & J Sports Prods., Inc.*

*v. Pagliaro* (*Pagliaro*), No. 1:12-CV-1507-LJO-SAB, 2014 WL 7140605, at *2 (E.D. Cal. Dec. 12, 2014) (same); *Barajas*, 2017 WL 469343, at *2 (setting Mr. Riley's hourly rate at $350); *G & G Closed Cir. Events, LLC v. Velasquez* (*Velazquez*), No. 1:20-cv-1736 JLT SAB, 2022 WL 348165, at *5 (E.D. Cal. Feb. 4, 2022) (setting Mr. Riley's rate at $350 and research attorney's hourly rate at $225).

Second, the cases from this District Plaintiff offers in support of its requested rates are not satisfactory evidence because they are distinguishable. (ECF No. 40 at 5–6.) In two of the cases, the court discussed hourly rates while conducting a lodestar cross-check to confirm a proposed class action settlement's fees award was reasonable. *Mostajo v. Nationwide Mut. Ins. Co.*, No. 2:17-cv-00350-DAD-AC, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023); *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012). As one of those cases notes, "[w]here a lodestar is merely being used as a cross-check, the court 'may use a "rough calculation of the lodestar."'" *Mostajo*, 2023 WL 2918657, at *11 (citation omitted). Here, where there is no agreed attorney fee proposed by settling parties, Plaintiff bears the full burden of producing satisfactory evidence in support of its requested rates, and a "rough calculation" is insufficient. *Jordan*, 815 F.2d at 1263; *see Mostajo*, 2023 WL 2918657, at *11 (indicating a "rough calculation" was sufficient for the distinct exercise of a lodestar cross-check).

The third case Plaintiff presents is also distinguishable because the party seeking fees put forward a more persuasive evidentiary showing that its requested rates were reasonable than Plaintiff does here. (ECF No. 40 at 6.) Unlike in the present action, the party seeking fees submitted a declaration from a legal fees consultant who opined that the requested rates were reasonable for the specific attorneys. *Am. Multi-Cinema, Inc. v. Manteca Lifestyle Ctr., LLC*, No. 2:16-cv-01066-TLN-KJN, 2024 WL 1312209, at *3 (E.D. Cal. Mar. 26, 2024). Another court in this District has found Mr. Riley's evidence in support of his requested hourly rates lacking because, as here, he did not include an affidavit like the one in *American Multi-Cinema, Inc.* from an attorney other than himself attesting to the reasonableness of his hourly rate. *J & J Sports Prods. Inc. v. Cervantes*, No. 1:16-cv-00485-DAD-JLT, 2019 WL 935387, at *3 (E.D. Cal. Feb.

26, 2019). Rather, as discussed above, all evidence presented to the Court that is specific to Mr. Riley and the research attorney supports the lower hourly rates of $350 and $225, respectively. *Albright*, 2013 WL 4094403, at *2–3; *Pagliaro*, 2014 WL 7140605, at *2; *Barajas*, 2017 WL 469343, at *2; *Velazquez*, 2022 WL 348165, at *5. Accordingly, the Court does not find *American Multi-Cinema, Inc.* useful in setting the hourly rates for Plaintiff's counsel.

In line with this Court's and District's prior fee awards and based on the evidence available to the Court, the Court finds Mr. Riley's reasonable hourly fee is $350, and the research attorney's reasonable hourly fee is $225.

*iii. Hours Expended*

Plaintiff admits its "counsel does not utilize billing software" and instead "reconstruct[s]" their billable hours "by way of a thorough review of the files." (ECF No. 40 at 6; ECF No. 40-1 at 2.) Implicitly acknowledging the deficiencies of this method, "Plaintiff recognizes the Court's discretion to reduce fees in such situations." (ECF No. 40 at 6–7.) In opposition, Defendant argues reconstructed billing records are inadequate and are not a billing statement Plaintiff's counsel has submitted or actually would submit to Plaintiff for payment. (ECF No. 45 at 4–5.) In reply, Plaintiff argues the Ninth Circuit does not require contemporaneous billing records and contends its counsel keeps "contemporaneous notes with respect to the dates and times the substance of the work is done" to aid in its reconstructed billing. (ECF No. 46 at 7 (quoting ECF No. 40-1 at 3).)

The Ninth Circuit has "expressed a 'preference' for contemporaneous records" but stopped short of holding they are "absolutely necessary." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (citation omitted). "[P]laintiff's counsel can meet his burden — although just barely — by simply listing his hours and 'identify[ing] the general subject matter of his time expenditures.'" *Id.* (citation omitted). When billing documentation is inadequate, a court may reduce the attorney fee award. *Hensley*, 461 U.S. at 433; *see id.* at 438 n.13 (noting with approval district court's reduction of "the hours of one attorney by thirty percent to account for his inexperience and failure to keep contemporaneous time records"). Plaintiff is therefore correct that contemporaneous billing records are not mandatory in the Ninth Circuit, but Plaintiff

is right to recognize the Court's ability to reduce fees based on non-contemporaneous billing. (ECF No. 40 at 6–7; ECF No. 46 at 7.)

Here, Plaintiff's reconstructed billing lists the date, timekeeper, general description, elapsed time in one-tenth-hour to one-hour increments, and dollar amount for each billing entry. (ECF No. 40-1 at 6–8.) Thus, the Court finds Plaintiff's counsel has "just barely" met his burden of providing billing records that reflect the hours and general subject matter of his work. *See Fischer*, 214 F.3d at 1121. However, the Court appreciates both parties' advisement that courts in this District and the Northern District of California have admonished Mr. Riley about the unreliability of his chosen billing method. (ECF No. 40 at 6; ECF No. 45 at 4–5.) This Court also has disapproved of Mr. Riley's billing practices. *Hunter*, 2025 WL 1409807, at *2 (noting Mr. Riley "has been cautioned about relying on non-contemporaneous billing records in prior cases" and citing cases), *findings and recommendations adopted in full sub nom. G&G Closed Cir. Events, LLC v. Hunter*, 2025 WL 1695946, at *1. Given the preference for contemporaneous records, this Court joins its sister courts and reiterates its disapproval of counsel's reconstructed billing practices. *See Barajas*, 2017 WL 469343, at *3 (characterizing "reconstructed billing records [as] inherently less reliable" when evaluating Mr. Riley's billing); *G & G Closed Cir. Events, LLC v. Ho*, No. 11-CV-03096-LHK, 2012 WL 3043018 (N.D. Cal. July 25, 2012) ("Because [Mr. Riley's] billing records were not created contemporaneously, the Court finds that they are inherently less reliable.").

Notwithstanding counsel's sufficient but underwhelming billing records, it remains for the Court to determine whether any of the hours were unnecessary, duplicative, or excessive. *Chalmers*, 796 F.2d at 1210. The Court first addresses specific billing entries that strike Defendant or the Court as suspect and then addresses general deficiencies in the billed hours.

*a) Specific Billing Entries*

In opposition, Defendant argues "[a]lmost all of plaintiff's time estimates . . . appear to be exaggerated overestimates of the actual time spent" and objects to specific entries, including the twenty-three hours Plaintiff's counsel billed for Plaintiff's supplemental brief. (ECF No. 45 at 5–

6.) In reply, Plaintiff argues the billed time for the supplemental brief "is not objectively unreasonable" and contends "significant time was needed to pick apart Defendant's contradictory testimony." (ECF No. 46 at 5.) Plaintiff also acknowledges its counsel previously has prepared similar documents to the ones it filed in this action, but it contends without elaboration that "every case is different." (*Id.*)

Defendant first asserts Plaintiff's counsel's repeated billing for four demand letters is "excessive" because the letters followed a standard form. (ECF No. 45 at 6.) While the letters may well be standard-issue templates, neither party has put the letters before this Court, so the Court cannot ascertain from the evidence before it whether the billed time for the letters was excessive.

Defendant next argues that billing two hours to review lawsuit papers is excessive because Plaintiff's counsel uses stock documents. (*Id.*) Even if these documents resemble prior examples, the Court finds two hours is not excessive because, as Plaintiff notes, "every case is different" and the Complaint contains specific facts about Defendant's operations. (ECF No. 1 at 3–5 (describing ownership and licensing information for Defendant's establishment); ECF No. 46 at 5.) Accordingly, the two hours billed for review of the initial papers is not excessive.

Similarly, Defendant contends that billing two hours to prepare, review, file, and serve written discovery requests is excessive because Plaintiff's counsel uses "literally identical" requests in each commercial signal piracy case he litigates. (ECF No. 45 at 6.) It appears from Defendant's written discovery responses included in Plaintiff's motion for summary judgment and reply in support thereof that the written discovery requests contain few facts or questions specific to the incident giving rise to this action. (*See* ECF No. 15-4 at 6–16; ECF No. 17-3 at 7–15, 19–25.) In fact, it appears the only detail specific to the incident not included in the definitions section was the incident date. (*Id.*) The Court therefore reduces the billing entry dated July 27, 2021, to one hour.

Defendant also asserts that six hours for the research attorney to review the case file and draft deposition questions is excessive. (ECF No. 45 at 6.) The Court notes Mr. Riley's combined preparation for and appearance at the deposition for which the research attorney

prepared questions is billed as two hours. (ECF No. 40-1 at 7.) The Court finds Defendant's contention persuasive. Spending at minimum three times as long preparing for a deposition as the length of the deposition itself is excessive. Accordingly, the Court finds three hours to be a reasonable time for the research attorney's work on November 17, 2024.

Lastly, Defendant argues that billing twenty-three hours to prepare a supplemental brief for the motion for summary judgment "is unheard of" and contends "it is not credible" that this task would take so much time. (ECF No. 45 at 6.) While spending twenty-three hours to prepare a brief may be reasonable in some circumstances, this billing entry fails on the face of Plaintiff's own records, which show the entry to be not just incredible but impossible. The twenty-three-hour billing entry for the research attorney's preparation of the supplemental brief is entered on December 16, 2024. (ECF No. 40-1 at 7.) Mr. Riley has a 0.5-hour entry the same day for review, filing, and service of the supplemental brief. (*Id.*) The docket indicates Mr. Riley filed the brief on December 16, 2024, at 12:51 p.m. PST. Thus, assuming Mr. Riley reviewed the brief after the research attorney finished his work on the brief, the research attorney would have needed to complete his work no later than about 12:21 p.m. PST. While Plaintiff fails to present information about the research attorney's current whereabouts, Mr. Riley's declaration indicates he has ties to Virginia, New Mexico, Washington, D.C., and New York. (ECF No. 40-1 at 2.) Charitably assuming the research attorney is in the Eastern Time Zone, the research attorney would have finished his work on the supplemental brief by about 3:21 EST — about 15.5 hours, not 23 hours, after December 16 commenced. The Court finds it unreasonable to assume the research attorney began working at midnight on December 16, 2024. The Court therefore finds 7.4 hours — which would cover nonstop work from 8 a.m. to 3:21 p.m. EST — to be the reasonable time for the research attorney's work on the supplemental brief. Regardless of how much time Plaintiff's counsel spent "pick[ing] apart Defendant's contradictory testimony," the time records necessarily cap the hours the research attorney could have spent on the supplemental brief in one day. (ECF No. 46 at 5.)

Plaintiff's illogical billing on December 16, 2024, does not end there. On top of the twenty-three hours the research attorney purportedly spent on the supplemental brief, the billing

records indicate the research attorney spent an additional three hours preparing a request for judicial notice on the same day. (ECF No. 40-1 at 7.) Given the twenty-four-hour daily time constraints under which we all operate, it is not possible for the research attorney to have worked twenty-six hours on December 16, 2024. Accordingly, the Court reduces the research attorney's billing for the request for judicial notice on that date to two hours.

The Court additionally reduces the billing entry for June 13, 2025, wherein Mr. Riley billed 0.5 hours to review and file the Court's minute order regarding plaintiff's motion for summary judgment. (ECF No. 40-1 at 8 (concerning ECF No. 35).) That minute order is a text-only docket entry comprising four short sentences. It is not reasonable to spend a half hour reviewing and filing such a short entry. Indeed, Mr. Riley billed 0.1 hours for review and filing of other text-only minute orders. (ECF No. 40-1 at 6–8 (concerning ECF Nos. 7, 20, 22, 28, 32, and 38).) The Court therefore reduces Mr. Riley's billing concerning the June 13, 2025, minute order to 0.1 hours.

*b) General Deficiencies in Billing Record*

The Court has discretion to further reduce billed hours. As noted above, a reduction is appropriate when the Court finds the billing documentation is inadequate. *Hensley*, 461 U.S. at 433. Additionally, "[w]hen clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors" because tasks like "filing, transcript, and document organization time . . . should [be] subsumed in firm overhead." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Moreover, a district court has "authority to reduce hours that are billed in block format" because "block billing makes it more difficult to determine how much time was spent on particular activities." *Welch*, 480 F.3d at 948.

As analyzed above, the Court finds the billing documentation of Plaintiff's counsel substandard. Regarding clerical work, Plaintiff asserts its counsel's declaration addresses "in detail" the work of his paralegals and assistants. (ECF No. 40 at 5.) In opposition, Defendant correctly points out that none of the tasks in Plaintiff's billing records are attributed to administrative staff, and the "many" administrative tasks are instead billed at Plaintiff's counsel's hourly rate. (ECF No. 45 at 8.) Plaintiff does not address administrative tasks in reply.

Regarding block billing, the Court notes Plaintiff's counsel's billing statement includes many block-billed entries that cover multiple tasks. (ECF No. 40-1 at 6–8.) For example, multiple entries combine counsel's time for tasks warranting fees, like the preparation and review of certain documents, with tasks that do not warrant fees, including execution, filing, and service of those documents. (*Id.*)

The Court finds Defendant's arguments about Plaintiff's counsel's administrative work persuasive. Plaintiff itself cites several orders from this District where this Court and others have reduced fees for Mr. Riley based on his inclusion of clerical work. (ECF No. 40 at 6, 8.) Two orders did not award fees for clerical work. *Barajas*, 2017 WL 469343, at *5; *Velasquez*, 2022 WL 348165, at *3–4. Additionally, this Court last year adopted findings and recommendations to reduce Mr. Riley's billed hours by thirty percent "to account for the lack of contemporaneous billing, the block-billing entries including clerical tasks, and unreasonable billing amounts for minor tasks." *Hunter*, 2025 WL 1409807, at *2, *findings and recommendations adopted in full sub nom. G&G Closed Cir. Events, LLC v. Hunter*, 2025 WL 1695946, at *1. Here, Plaintiff again presents reconstructed records with block billing and billing for clerical tasks. (ECF No. 40-1 at 2, 6–8.) In keeping with this Court's and District's treatment of inadequate and unreasonable billing like what Mr. Riley presents again in this action, this Court reduces the remaining billed hours by thirty percent.

*iv. Lodestar Calculation*

Taking into account the reductions in hourly rate and hours expended described above, the Court calculates the attorneys' fees as follows:

| **Attorney** | **Requested Hourly Rate** | **Adjusted Hourly Rate** | **Hours Requested** | **Adjusted Hours** | **Adjusted Fees** |
|---|---|---|---|---|---|
| Thomas P. Riley | $750 | $375 | 26.78 | 17.77 | $6,662.25 |
| Research Attorney | $325 | $225 | 95.50 | 53.13 | $11,954.25 |

| | | | | | |
|---|---|---|---|---|---|
| Total | | | | | $18,616.50 |

*v. Enhancement or Reduction of Lodestar*

"[I]n rare and exceptional cases, the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation." *Welch*, 480 F.3d at 946. Here, the Court finds the *Kerr* factors are subsumed in the lodestar amount as analyzed above and declines to enhance or further reduce the lodestar. However, the Court evaluates two *Kerr* factors — the time and labor required and the amount involved and results obtained — to address Defendant's remaining arguments.

*a) Time and Labor Required*

Defendant argues Plaintiff's counsel spent little time on the present action because he has handled thousands of similar cases and has an "arsenal" of example filings from which to draw. (ECF No. 45 at 4, 6–7.) Defendant requests the Court reduce Plaintiff's attorneys' fees because, like in *Sanchez v. Bank of America*, No. 09-5574 SC, 2010 WL 2382347 (N.D. Cal. June 10, 2010), Plaintiff's counsel can reuse work from prior cases. (*Id.* at 4.) In reply, Plaintiff admits it "is accurate to a point" that it has prepared similar documents in the past but contends "every case is different." (ECF No. 46 at 5.)

In *Sanchez*, the party requesting attorneys' fees sought fees for 89.8 hours of work in defending against an action that was "near-identical" to another case brought by the same opposing counsel. *Sanchez*, 2010 WL 2382347, at *5. The court reduced the hours to thirty, i.e., by nearly two-thirds, to account for the requesting party's prior experience litigating a very similar matter and the lack of novel or difficult legal questions in the new matter. *Id.*

Here, the Court notes Mr. Riley's extensive experience with signal piracy matters from the authority the parties cite. *See, e.g.*, *Hunter*, 2025 WL 1409807; *Albright*, 2013 WL 4094403; *G & G Closed Cir. Events, LLC v. Ruiz* (*Ruiz*), No. 18-CV-464-CAB-MDD, 2019 WL 5268656 (S.D. Cal. Oct. 17, 2019); *Velasquez*, 2022 WL 348165; *Pagliaro*, 2014 WL 7140605. Defendant also correctly notes Mr. Riley admits he has handled "thousands of commercial signal piracy files." (ECF No. 40-1 at 2; ECF No. 45 at 4.) Plaintiff itself does not explain how this action is

different from others its counsel has handled. (ECF No. 46 at 5.) Accordingly, the Court finds Mr. Riley has built an economy of scale in commercial signal piracy matters. However, this matter is distinguishable from *Sanchez* because the Court ordered supplemental briefing on a novel legal issue, namely the effect of *G & G Closed Circuit Events, LLC v. Liu*, 45 F.4th 1113 (2022) on the cross-motions for summary judgment. (ECF No. 22.) As a result, the two-thirds reduction in hours imposed in *Sanchez* is not appropriate. Instead, the Court finds the thirty-percent reduction it imposed above adequately accounts for the time and labor required of Plaintiff's counsel in this action.[3]

*b) Amount Involved and Results Obtained*

In opposition, Defendant argues (1) the requested attorneys' fees are disproportionate to the damages award and (2) similar disproportionalities could create perverse incentives for defendants in commercial signal piracy matters. (ECF No. 45 at 2–4.) The Court addresses these two arguments and Plaintiff's responses to them in turn.

*a. Disproportionate Attorneys' Fees Relative to Damages*

First, Defendant contends Plaintiff's requested $51,122.50 in attorneys' fees and $2,542.27 in costs is "unreasonable and far out of proportion with" the $7,860.00 Plaintiff recovered in damages. (ECF No. 45 at 2.) In support of this argument, Defendant cites to *Hensley v. Eckerhart* and cases from the Seventh Circuit and Northern District of Illinois. (*Id.* at 2–3.) In reply, Plaintiff distinguishes Defendant's proffered cases and analogizes to *Ruiz*, which rejected Defendant's argument. (ECF No. 46 at 2–4.)

The Court finds Plaintiff's argument persuasive. Both parties correctly note *Hensley* concerned recovery of attorneys' fees based on the results obtained. (ECF No. 45 at 2–3; ECF No. 46 at 4.) The Supreme Court considered "results obtained" by separating out the claims on which the party seeking fees prevailed, for which the prevailing party may recover fees, from unsuccessful claims "based on different facts and legal theories," for which the prevailing party

---

[3] The reduction is also in line with another court's treatment of Mr. Riley's billed hours given his extensive signal piracy practice. *See Ruiz*, 2019 WL 5268656, at *2 (reducing requested fees by fifteen percent "to account for [Mr. Riley]'s familiarity with commercial signal piracy cases such as this case").

may not recover fees. *Hensley*, 461 U.S. at 434–35. Here, Plaintiff moved for summary judgment on its claims for violations of § 605, state-law conversion, and California Business and Professions Code § 17200. (ECF No. 15 at 1–2.) The Court granted Plaintiff's motion for partial summary judgment in full, noting Plaintiff's remaining claim for violation of § 553(a)(1) was mutually exclusive of its claim under § 605. (ECF No. 30 at 4 n.6, 5, 10.) As a result, Plaintiff was successful on all claims for which it sought summary judgment, and all three claims moreover stem from the same facts and legal theory, namely Defendant's unauthorized divulgement of the Program. Given these facts, Plaintiff's analogy to *Ruiz* is apt. (ECF No. 46 at 3.) There, as here, the plaintiff was successful on all claims for which it sought judgment, so the defendant's proportionality argument lacked merit. *Ruiz*, 2019 WL 5268656, at *2. The Court therefore declines to further reduce the attorney fee award based on *Hensley*.

The Court also agrees with Plaintiff that, beyond not being binding in this District, the Seventh Circuit and Northern District of Illinois cases Defendant cites do not aid his argument. (ECF No. 45 at 3; ECF No. 46 at 2–3.) In the cited case, the Seventh Circuit opined "the whole point of fee-shifting" statutes, like the one at issue here, is to encourage cases where the costs may exceed the amount in controversy. *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009). Similarly, the magistrate judge's report and recommendations in the Northern District of Illinois matter noted the Seventh Circuit's rule that "the lodestar should not be reduced merely because the request for attorneys' fees is disproportionate to the . . . damage award," although a "massive disproportionality" should not be ignored altogether. *Richardson v. City of Chicago*, No. 08 C 4824, 2012 WL 6185867, at *7 (N.D. Ill. Nov. 20, 2012), *objections overruled in part and sustained in part*, 2013 WL 2451107, at *1 (N.D. Ill. June 5, 2013). Here, the fee-shifting statute incentivizes attorneys to litigate even low-value cases, and the fees the Court awards are about 2.4 times the damages award, which is not a "massive disproportionality." 47 U.S.C. § 605(e)(3)(B)(iii); *Richardson*, 2012 WL 6185867, at *7. Defendant's proffered authority thus undercuts, rather than supports, his position.

*b. Perverse Incentives*

Second, Defendant claims without citation that awarding the requested attorneys' fees

would create a "perverse incentive" because a defendant could ignore a signal piracy case, face default judgment, and still fare better financially than responding to the case, losing, and having to pay attorneys' fees. (ECF No. 45 at 3–4.) In reply, Plaintiff contends Defendant's argument has been rejected, citing *Ruiz*, 2019 WL 5268656, at *2. (ECF No. 46 at 5.) In that case, the Southern District of California responded to the arguments of Defendant's counsel by opining "a more appropriate response to such a possibility would be to follow the law appropriately and avoid facing such a consequence altogether." *Ruiz*, 2019 WL 5268656, at *2. This view finds support in *Albright*, which Plaintiff cites. (ECF No. 40 at 6.) While agreeing Defendant's contemplated perverse incentive was possible, the court found the possibility unpersuasive because there is a countervailing "risk that a default judgment could . . . result in a very significant damages and attorney's fees award." *Albright*, 2013 WL 4094403, at *5. The Court concurs with its sister courts that Defendant's argument is unpersuasive. The Court is further unpersuaded by Defendant's policy argument because it is not this Court's role to question Congress's determination to "compensate lawyers for all time reasonably expended on a" signal piracy case. *See City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (plurality opinion) (declining to adopt a proportionality rule for fee-shifting statute in federal civil rights actions). Accordingly, the Court declines to further reduce Plaintiff's attorneys' fees based on the amount involved and the results its counsel obtained.

B. <u>Costs</u>

Under § 605(e)(3)(B)(iii), an aggrieved party shall recover "full costs." Plaintiff contends "full costs" include pre-litigation investigative costs, here $650. (ECF No. 40 at 7–8; ECF 40-1 at 8.) However, Plaintiff acknowledges courts are split about the recoverability of these costs, with this Court having determined they are not recoverable. (ECF No. 40 at 7–8.) Plaintiff's counsel declares "[b]ased on [his] experience in handling anti-piracy cases, it is [his] opinion that the fee of $650.00 for the auditor's investigation in this case is a reasonable fee." (ECF No. 40-1 at 3.) In opposition, Defendant argues investigative fees are not recoverable and even if they were, Plaintiff's claimed costs lack adequate supporting documentation. (ECF No. 45 at 8–9.) In reply, Plaintiff asserts other courts in this District have permitted recovery of investigative costs and

reiterates its belief that the investigative cost is recoverable here. (ECF No. 46 at 8.)

The Court addresses below Plaintiff's requested recovery of costs for its investigation, for shipping and photocopying charges, and for the complaint filing fee, service of process fee, and transcript fee.

*i.* *Investigative Costs*

The Court is persuaded Plaintiff cannot recover investigative costs, and even if it could, Plaintiff failed to provide sufficient documentation of the cost. Last year, the Court adopted findings and recommendations that investigative costs in another signal piracy case Mr. Riley handled were not recoverable because pre-filing investigation costs in general cannot be recovered. *Hunter*, 2025 WL 1409807, at *3, *findings and recommendations adopted in full sub nom. G&G Closed Cir. Events, LLC v. Hunter*, 2025 WL 1695946, at *1. The Court also adopted the magistrate judge's conclusion that the invoice Mr. Riley provided would be insufficient even if investigative costs were recoverable because the invoice lacked "information about the qualifications of the investigator or the services provided." *Id.* This conclusion is in line with costs orders in other cases Mr. Riley has brought in this District that Plaintiff cites in support of other arguments. (ECF No. 40 at 6, 8.) In these cases, courts in this District uniformly declined to award Mr. Riley's client investigative costs because they were insufficiently documented, even if they could be recovered. *Albright*, 2013 WL 4094403, at *6; *Barajas*, 2017 WL 469343, at *5; *Velasquez*, 2022 WL 348165, at *6. The Court again finds investigative costs are not recoverable.

Even if Plaintiff could recover investigative costs, Plaintiff fails to substantiate the costs here. The invoice Plaintiff provided for its investigation is largely redacted. (ECF No. 40-1 at 11.) The unredacted portion lists the investigative service's name and address and a chart entry for Defendant's establishment with "Yes" entries in columns labeled "Photos," "License," and "Video" along with a "Total" column entry of $650. (*Id.*) Like in *Hunter*, this documentation is missing important details about the investigator's qualifications and services rendered. Additionally, beyond the invoice, the only support for the $650 fee is Plaintiff's counsel's unadorned opinion that it is reasonable. (ECF No. 40-1 at 3.) Accordingly, this Court finds

Plaintiff's justification of the claimed $650 expense insufficient.

Plaintiff's citations to three cases awarding investigative costs are unconvincing to this Court. (ECF No. 40 at 7–8.) The two cases that directly addressed the recoverability of investigative costs are from other districts and thus of little import where this District and Court have come to a contrary conclusion. *Ruiz*, 2019 WL 5268656, at *3; *G&G Closed Cir. Events LLC v. Williams*, No. CV-19-05142-PHX-DWL, 2020 WL 4464387, at *2 (D. Ariz. Aug. 4, 2020). As Plaintiff acknowledges (ECF No. 40 at 8), the one remaining case from the Eastern District that did award investigative costs did so without analysis, *Pagliaro*, 2014 WL 7140605, at *2. As a result, the Court properly disregards these other cases in favor of its District's on-point precedent.

*ii. FedEx Shipping Charges and Photocopying Charges*

The Court also finds persuasive Defendant's unrebutted contention that Plaintiff's FedEx and photocopying costs lack adequate documentation. (ECF No. 45 at 8.) Plaintiff does not respond to Defendant's argument regarding documentation of other costs. (*See* ECF No. 46 at 8 (addressing investigator fee but no other fees).) However, in support of unrelated arguments, Plaintiff cites two orders, including one from this Court, that declined to award Mr. Riley's clients costs for courier fees based on insufficient supporting documents. (ECF No. 40 at 6, 8.) As this Court determined in one of these cases last year, "[c]ourier charges must be documented." *Hunter*, 2025 WL 1409807, at *4, *findings and recommendations adopted in full sub nom. G&G Closed Cir. Events, LLC v. Hunter*, 2025 WL 1695946, at *1; *accord Velasquez*, 2022 WL 348165, at *7. Here, Plaintiff offers no exhibits substantiating any of the ten FedEx and photocopying costs included in its invoice. (ECF No. 40-1 at 8–9.) This Court therefore declines to award Plaintiff the $392.82 it requests in costs for shipping and photocopying.

*iii. Complaint Filing Fee, Service of Process Fee, and Transcript Fee*

Defendant does not challenge Plaintiff's recovery of costs for the filing fee, service of process fees, and transcript fees. (ECF No. 40-1 at 9.) Plaintiff provides documentation of the service of process fees, and the docket reflects the filing fee. (ECF No. 40-1 at 13–15.) The transcript cost is recoverable under statute and local rule. 28 U.S.C. § 1920(2); E.D. Cal. L.R.

292(f)(3). Accordingly, the Court awards Plaintiff $1,499.45 in costs.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 40) and AWARDS Plaintiff $18,616.50 in attorneys' fees and $1,499.45 in costs.

IT IS SO ORDERED.

DATE: September 29, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE